## CALEB WHITING *vs.* JACOB TRAFTON.

Since the *stat.* 1835, *c.* 195, for the relief of poor debtors, the body of a debtor cannot be legally arrested on a writ declaring on a contract, unless the creditor, or his agent or attorney, first make oath that he has reason to believe and does believe, that the debtor " is about to depart and *establish his residence beyond the limits of this State,* with property or means exceeding the amount required for his own immediate support."

And if the affidavit do not state, that the debtor " was about to depart and establish his residence beyond the limits of this State," and the officer having such writ, return thereon, that he has arrested the body of the debtor, and that he gave bail, and afterwards refused to deliver up any bail bond to the creditor on demand, or to return it to the clerk's office, no action can be maintained by the creditor against the officer for that cause.

THIS was an action against the defendant, as Sheriff of the county, for an alleged misfeazance of his deputy, *Nathan Heywood.* The important facts in the case are found in the opinion of the Court. The affidavits on the writ against *Littlefield* were as follows. " State of *New-Hampshire. Rockingham, ss. March* 15, 1836. Then personally appeared *Caleb Whiting,* the creditor within named, and made oath, that the amount or principal part of the debt claimed by him, the said *Whiting,* creditor as aforesaid, is actually due and unpaid, and that he has sufficient reason to believe and doth believe, that the debtor within named is about to change his residence and abscond beyond the limits of the State, with property or means exceeding the amount required for his immediate support." " State of *Maine. Waldo, ss. March* 17, 1836. Then personally appeared A. B. attorney to the creditor within named, and made oath that the demand or the principal part thereof, within named, is due, and that he has reason to believe and does believe, that the said *Littlefield* is about to depart and take with him property or means exceeding the amount required for his immediate support."

*Alden* and *Crosby,* for the plaintiff, cited and relied upon *Simmons* v. *Bradford,* 15 *Mass. R.* 82 ; *Eaton* v. *Ogier,* 2 *Greenl.* 46 ; *stat.* 1835, *c.* 195. The oath in this State is sufficient to authorize the arrest, and that in *New-Hampshire* cannot lessen its force.

*W. Kelley,* for the defendant, argued, that the deputy stood only in the place of the bail; that the statute authorizing the arrest of the body must be complied with before a lawful arrest can take place; that each of the oaths is wholly defective; and that the action cannot be maintained. If the action can be supported, as no suit could be maintained on the bail bond, the damages will be but nominal.

The opinion of the Court was drawn up by

EMERY J. — This is a suit against the defendant as Sheriff of this county, because, as is alleged, *Nathan Heywood,* a deputy of the defendant, on a writ of attachment in favor of the plaintiff, against one *Horace P. Littlefield,* on the 21st of *March,* 1836, returned that he had arrested the body of said *Littlefield,* and that he gave bail, and the plaintiff having obtained judgment in his suit against *Littlefield,* took out execution, and delivered it to *Heywood* on the 11th of *May,* 1837, for service, who returned it unsatisfied for want of property belonging to *Littlefield* to be found in his precinct, and without arresting *Littlefield,* he not being found within his precinct, and the plaintiff on the 1st of *June,* 1837, demanded of said *Heywood* the bail bond given by said *Littlefield,* but *Heywood* refused to deliver it to the plaintiff, or return it to the clerk's office. The plaintiff relies upon the case of *Simmons* v. *Bradford,* 15 *Mass. R.* 82, for sustaining his action. It was decided in 1818. The Court there, speaking by Justice *Jackson,* say, " when the officer returned that he had taken bail, which he knew was not literally true, he must be understood as intending that he would himself be the bail or surety for the defendant. He stipulated in effect with the plaintiff that the latter should have all the advantage and security which he would have derived from bail regularly and lawfully taken." And evidence of the poverty of the original defendant debtor, offered in mitigation of damages, was holden to be inadmissible.

Previous to the *stat. c.* 520, passed *March* 31, 1831, for the abolition of imprisonment of honest debtors for debt, all persons were liable to arrest, though not at all times. The *stat. c.* 195, for the relief of poor debtors, passed *March* 24, 1835, repealing all other acts and parts of acts inconsistent with the provisions of this act, in the third section enacted, " that any person may be arrested on

mesne process on any contract, bond, specialty, or judgment mentioned in the second section of this act, and held to bail or committed to prison, when he is about to depart and establish his residence beyond the limits of this State, with property or means exceeding the amount required for his own immediate support ; provided any creditor, his agent or attorney, shall make oath or affirmation, before a Justice of the Peace, to be certified by such Justice on such process, that he has reason to believe and does believe, that such debtor is about to depart, and take with him property or means as aforesaid, and that the demand in the writ is, or the principal part thereof, due him."

The design of this statute was not only to afford *prima facie* evidence that a debt was due to the plaintiff from the defendant, but also to prevent unreasonable detentions of the person by arrest, when there were no good grounds for believing that an intention existed on the part of the debtor, to withdraw himself and his property from the jurisdiction of the State, by establishing his residence beyond its limits. It certainly did not mean to give encouragement to capricious arrests, when a person was preparing for a mere journey for a short time, with the intention of returning and maintaining his residence in the State, and to be amenable to the first execution, when it should be recovered against him. As a check, it was deemed requisite, that nothing less solemn than the oath of a creditor, his agent or attorney, who it is supposed may be in the exercise of some information as to the merits of the demand, and of vigilance as to the movements of the principal debtor, shall authorize an officer to arrest and hold a debtor to bail on mesne process. It is a measure against the liberty of the citizen. And the preparatory steps must contain a full and clear compliance with the preliminary requirements of the statute. The oath taken in *New-Hampshire*, we cannot consider as a compliance with the requisition of the statute, because it speaks in that State, in the county of *Rockingham*, that the party believes, "that the debtor within named, is about to *change* his residence and abscond beyond the limits of the State," not saying the State of *Maine*. It was the language prescribed for the affidavit to be taken by virtue of the *stat. c.* 520, passed *March* 31, 1831, which was repealed so far as inconsistent with the *stat. c.* 195. This last act has made a change

in the phraseology on this subject. We cannot take any thing by intendment, or supply deficiencies in a matter which the legislature deemed material. Supposing it was taken with a view to be used in this State, it ought to contain all those requisites that are essential in an affidavit made in this State, to hold to bail. *Norton* v. *Danvers*, 7 *T. R.* 371, *in note ; Omealy* v. *Newell,* 8 *East,* 364.

It would seem that there was a consciousness of defect in this matter in the breast of the agent. The oath in *New-Hampshire* was certified to be taken on the 15th day of *March,* 1836. And on the 17th day of *March,* 1836, the certificate of the Justice of the Peace in our county of *Waldo,* was superadded, as to the oath of the attorney of the creditor. This certificate is totally defective in omitting the very essential words, " *establish his residence beyond the limits of the State.*" It is by no means a compliance with the law. The words, " as aforesaid," in the proviso in the third section, decidedly indicate that it is necessary to allege in the oath the fact of the good reason to believe, and the belief that the person to be arrested is about to depart and establish his residence beyond the limits of the State, with property or means exceeding the amount required for his own immediate support, as well as that the demand in the writ is, or the principal part thereof due him.

In some of the highest Courts of the country from which our ancestors came, the practice is invariably to reject as inadmissible supplemental or explanatory depositions, to rectify an omission, or to explain an ambiguity in the original affidavit of debt. And the rule is founded partly on the ground that if supplemental affidavits were received, the original would be drawn with carelessness, and lead to the practice of arresting parties on vague and ambiguous documents. *Jacks* v. *Pemberton & al.* 5 *T. R.* 532 ; *Mallary & als. assignees,* v. *Buckhtz,* 2 *M. & S.* 513.

In one of the tribunals in that country, where the affidavit to hold to bail is defective, the Court of Common Pleas would formerly exercise its discretion in receiving or rejecting supplemental and explanatory affidavits, and has not, in every instance, as in the Court of King's Bench and Exchequer, interdicted the admission of these auxiliary documents. It is deemed an indulgence to be received only to supply something which is ambiguous on the face of the original instrument, which *the Court, for its own satisfaction*

is desirous of having explained. *Green* v. *Redshaw*, 1 *Bos. &amp; Pul.* 227 ; *Garnham, ex'rx,* v. *Hammond,* 2 *Bos. &amp; Pul.* 298, *and cases there cited.*

*Now,* it is said, that by a general rule of all the Courts *there,* no supplemental affidavit is allowed to supply any deficiency in the affidavit to hold to bail. And in *Wooley* v. *Escudier,* 2 *Moore &amp; Scott,* 392, a rule was made absolute, with costs, that a bail bond, given by the defendant, should be delivered up to be cancelled, and the defendant discharged, on entering a common appearance, on the ground of the insufficiency of an affidavit, in not stating by whom a bill of exchange was indorsed to the plaintiff.

It has been held, that where the defendant has pleaded to the action, or suffered judgment by default, and notice of executing a writ of inquiry has been given, the defendant cannot, after such an implied acquiescence in the plaintiff's proceedings, object to the affidavit to hold to bail. *Levy* v. *Duponte,* 7 *T. R.* 372, *in note ; Desborough* v. *Copinger,* 8 *T. R.* 77.

Whatever construction may have been made in respect to the relative rights of the plaintiff and defendant in the first suit, we think that the officer is not to be subjected to suffering in damages, where, by the plaintiff's own laches, the officer could not be justified in making the arrest. For by the first section of the *stat. c.* 195, it is enacted, that no person shall be arrested on contract express or implied, or judgment thereon, when the original debt or damages are less than ten dollars, and by the second section it is enacted, " that in all other cases on contracts, express or implied, bond or other specialty, or on a judgment in civil actions, *no person shall be arrested or imprisoned on mesne process, except as hereinafter excepted,*" and then follows the third section before recited.

A cause of action cannot be derived from an illegal source, or culpable breach of duty. The first fault is here on the part of the plaintiff. No bail could rightfully be required in the case under consideration. The return of the officer, that he had taken bail, was most indiscreetly made. But the plaintiff has not entitled himself to take any advantage of it. The law has been so materially changed since the decision of *Simmons* v. *Bradford,* that we cannot consider it as forming a rule for our guide in the present action. According to the agreement of the parties, a nonsuit is to be entered.